# Richmond

## EUGENE SAMUEL WHITFIELD v. OCIE W. DUNN.

January 16, 1961.

Record No. 5178.

Present, Eggleston, C. J., and Spratley, Buchanan, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*Edwin B. Meade* (*Meade, Tate & Meade*, on brief), for the plaintiff in error.

*J. Frank Shepherd* (*Paul Whitehead*, on brief), for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This is an action for damages instituted by Ocie W. Dunn against Eugene Samuel Whitfield, who, while operating his automobile, struck the plaintiff, a pedestrian, on a state highway. At the conclusion of plaintiff's evidence, defendant's motion to strike was overruled. Thereupon, defendant rested without testifying personally, or offering any evidence in his own behalf. The jury returned

a verdict in favor of the plaintiff in the sum of $13,500.00, and, over the objection of the defendant, judgment was entered accordingly. We granted this writ of error.

Defendant, in his petition for a writ of error, made four assignments of error. At the bar of this Court, he abandoned two of them, and conceded that if we did not sustain his assignment that plaintiff was guilty of contributory negligence as a matter of law, it would not be necessary to consider the remaining assignment.

The evidence is without material conflict.

The accident occurred on May 2, 1959, about 8:30 p. m., on State secondary Highway No. 634, in Pittsylvania County, a short distance from the residence of the plaintiff, Ocie W. Dunn. The highway, 30 feet wide, runs generally north and south. It has a hard surface, with a width of about 18 feet, and dirt and gravel shoulders on each side 2 or 3 feet wide, with a ditch or drain, about 2 feet wide, ranging in depth from 6 to 12 inches adjoining the outward side of each shoulder. There is no sidewalk on either side. At the point of the accident, the road is almost straight, but with a slight curve to the south beginning about 400 feet distant to the north. The night was dark, the weather clear, and the roadway dry.

Dunn, 55 years of age, was wearing a white shirt with yellow stripes, and blue trousers. He had been to a store about 700 feet north of his residence on the opposite side of the highway, purchased some articles, and was returning to his home. He walked on the left side of the highway about 300 feet, crossed the road, and proceeded southerly along the right shoulder, off the hard surface, for about 80 feet to the edge of a driveway leading to the residence of Sidney M. Jones, intending to take a path off of the right-of-way of the highway, back of the ditch line, to his residence which adjoined the property of Jones on the south. As he reached the edge of Jones' driveway, he was struck from behind by the defendant's automobile and severely and permanently injured.

Just before the accident, M. O. Akers, a Deputy Sheriff, who was driving in a northerly direction, observed Dunn walking along the shoulder "just about a foot off the pavement," and saw defendant's automobile approaching at a "pretty good rate of speed," estimated to be 50 to 55 miles per hour. Akers dimmed the headlights of his car as did the defendant. Knowing that there was a "dip in the road or lump" like a "rock under the surface or something like that," which would affect "a speeding car," Akers drove to his right into

the shallow ditch or incline beside the eastern shoulder of the highway, in order to give the oncoming automobile ample room on the road. The two cars passed each other about 125 feet north of Jones' driveway. Thereafter Akers heard the noise made by defendant's car striking Dunn. He immediately turned his car around, returned southerly, and found Dunn lying, "longways," in Jones' driveway, with his head on the hard surface of the highway, on which there was a blood spot. He observed defendant's automobile stopped about 175 to 180 feet to the south. He then met the defendant and his two companions near the rear of defendant's automobile, and asked the defendant why he hit Dunn, to which defendant replied that he did not see him. Akers said there was a certain amount of dust and gravel on the highway south of Jones' driveway, some skid or tire marks on the hard surface, west of the center, and a scuffed place on the edge of the hard surface, which appeared to be "freshly" made, south of and beyond the point of the accident.

C. R. Gunter, a State Trooper, who investigated the accident, testi- fied as to the highway, its surface, direction, width, and shoulders. He located the blood spot above mentioned about 1 foot on the hard surface, some dirt, light skid marks leading to the left of the north- bound lane, south of Jones' driveway, and a scuffed place on the edge of the hard surface, also beyond the driveway. He said that a slight dent was found in the rim of the right headlight of the defendant's car; that the rear-view mirror on the right side of the automobile was broken, and a part of it found in the ditch on the west side, south of the point of accident; that the car was dusty, and it looked as if something had rolled down or against its right side. He found no marks on the highway north of the place of the accident or the blood spot, nor any indication that defendant's auto- mobile had gotten off the hard surface before the accident. He asked the defendant how the accident happened, and the defendant replied that "He was traveling along about forty-five or fifty and he met this car and the headlights sort of blinded him and he didn't remember the man at all until—He didn't remember seeing the man until after he hit him."

Dunn testified that he was walking southerly, on the right shoulder of the road completely off the hard surface; that there was "plenty of walking space" on the shoulder; that he saw Akers' car approach- ing from the south; that he also observed the reflection of the lights from defendant's car; that he heard no horn blow; that he did not

look around or backwards; and that after Akers' car had passed him, and just as he reached the edge of Jones' driveway, defendant's car struck him.

Excepting his statements to Akers and Gunter, defendant made no explanation of the accident.

The jury was fairly and fully instructed as to the respective theories and duties of the parties.

Defendant claims that Dunn, in walking on the right side of the highway, and in failing to heed the lights of defendant's car behind him, was negligent as a matter of law.

The first point involves the application of Code, § 46.1-234, and subsections (10), (10a) and (10c) of § 46.1-1, 1958 Replacement Volume, as amended in 1958.

Section 46.1-234 provides as follows:

"Pedestrians not to use roadway except when necessary; keeping to left.—Pedestrians shall not use the roadways or streets, other than the sidewalk thereof, for travel, except when necessary to do so because of the absence of sidewalks, reasonably suitable and passable for their use, in which case, if they walk upon the hard surface, or the main travelled portion of the roadway, they shall keep to the extreme left side or edge thereof, or where the shoulders of the highway are of sufficient width to permit, they may walk on either shoulder thereof."

Subsection (10) of § 46.1-1 defines "Highway" as:

"The entire width between the boundary lines of every way or place of whatever nature open to the use of the public for purposes of vehicular travel * * *."

Subsection (10a) defines "Roadway" as:

"That portion of a highway improved, designed or ordinarily used for vehicular travel, exclusive of the shoulder. * * *"

Subsection (10c) defines "Shoulder" as:

"That part of a highway between the portion regularly travelled by vehicular traffic and the lateral curb line or ditch."

The evidence shows that there were no sidewalks on the highway; that Dunn was struck by defendant's car while walking on its shoulder, that "part of a highway between the portion regularly travelled by vehicular traffic and the lateral" ditch; and that defendant had sufficient room on the "roadway", that "portion of a highway improved, designed or ordinarily used for vehicular travel, exclusive of the shoulder, * * *" to drive safely past Dunn.

Whether the shoulder of the highway was of sufficient width to permit Dunn to walk upon it was a question of fact. Dunn said that it was. The witness, Akers, saw him walking "about a foot off the pavement." There is no evidence to the contrary, save the inference which might be drawn from its narrow width. The jury agreed with Dunn.

Whether Dunn acted as an ordinarily prudent person would have acted under the same or similar circumstances, that is, whether upon observing the lights of defendant's car, he had the right to rely on the assumption that defendant would drive upon that portion of the highway "improved, designed or ordinarily used for vehicular travel," until he knew or in the exercise of reasonable care should have known otherwise, was also a question of fact for the jury. *Bonich* v. *Waite*, 194 Va. 374, 378, 73 S. E. 2d 389; *Hardiman* v. *Dyson*, 194 Va. 116, 121, 72 S. E. 2d 361; *Millard* v. *Cohen*, 187 Va. 44, 51, 46 S. E. 2d 2.

In considering that question the jury had the right to consider all reasonable inferences deducible from the evidence. Akers, driving on the far side of the road, saw Dunn notwithstanding the lights from defendant's car, while defendant, driving on the near side, slightly bending to his right, admitted he did not see Dunn after he had passed Akers' car, and until he hit him.

It has been well settled by many of our decisions that the question of contributory negligence is generally one of fact for a jury to determine. "It is only when the issue is one about which reasonable persons cannot differ—the question so plain in the meaning and interpretation that should be given to it—that no doubt is admitted of its legal significance and effect, that it becomes a question of law for the courts to determine." *Virginia Electric & Power Company* v. *Steinman*, 177 Va. 468, 473, 474, 14 S. E. 2d 313; *Virginia Electric & Power Company* v. *Courtney*, 182 Va. 175, 27 S. E. 2d 917; *Kidd and Taylor* v. *Little*, 194 Va. 692, 695, 74 S. E. 2d 787; *Riddle* v. *Barksdale*, 194 Va. 766, 770, 75 S. E. 2d 507; *Simmons* v. *Craig*, 199 Va. 338, 343, 99 S. E. 2d 641; and *Jones* v. *Aluminum Window & Door Corporation*, 201 Va. 283, 289, 110 S. E. 2d 531.

"Contributory negligence of a plaintiff is failure to use reasonable care. Such failure is not presumed, but must be shown by the evidence. Depending as it does upon the facts of the case, it is usually a jury question, and is to be decided by the court only when reasonable men should not differ as to what facts are proved and as to the proper inferences from the facts proved." *Norfolk, etc., Belt Line*

*R. Co.* v. *Freeman,* 192 Va. 400, 408, 64 S. E. 2d 732; *Elswick* v. *Collins,* 194 Va. 292, 295, 72 S. E. 2d 626.

The burden was on the defendant not only to prove that Dunn was guilty of contributory negligence, but that his negligence was a proximate cause, a direct, efficient contributing cause of the accident. *Powell* v. *Virginian Railway Company,* 187 Va. 384, 391, 46 S. E. 2d 429.

Reasonable men may differ as to whether Dunn exercised proper judgment in not stepping into the ditch on the side of the road when he observed the lights of the car approaching from his rear. That made it a jury question, and the jury has said that he was not guilty of negligence which was a proximate cause of the accident, and their verdict cannot be disturbed, although this Court sitting as a jury might have reached a different conclusion. *Virginia Stage Lines* v. *Duff,* 185 Va. 592, 595, 39 S. E. 2d 634.

We find no reversible error in the proceeding, and the judgment is affirmed.

*Affirmed.*