PRESENT: Hassell, C.J., Lacy, Keenan, Koontz, Lemons, and Agee, JJ., and Russell, S.J.

ESTATE OF BOBBY GENE MOSES,
DECEASED, BY THE PERSONAL
REPRESENTATIVE, CARLTON L. MOSES

OPINION BY
JUSTICE G. STEVEN AGEE
April 20, 2007

v. Record No. 060369

SOUTHWESTERN VIRGINIA TRANSIT
MANAGEMENT COMPANY, INC., ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
Clifford R. Weckstein, Judge

Carlton L. Moses ("Moses"), personal representative of the Estate of Bobby Gene Moses (the "decedent") appeals from the judgment of the Circuit Court of the City of Roanoke in favor of Southwestern Virginia Transit Management Company, Inc. and Karen R. Poindexter (collectively, "the defendants"). Moses contends the circuit court erred when it set aside a jury verdict in his favor and entered judgment for the defendants on the basis that the decedent was guilty of contributory negligence as a matter of law. For the reasons set forth below, we will reverse the judgment of the circuit court.

I. BACKGROUND AND MATERIAL PROCEEDINGS BELOW

The decedent, seventy-two years of age, was crossing Campbell Avenue, a one-way, four-lane street in downtown Roanoke on the afternoon of July 16, 2002. He testified that he looked both ways before stepping onto Campbell Avenue at a point approximately 125 feet from a crosswalk at the nearest

intersection.  At some point as the decedent crossed Campbell Avenue, a Southwestern bus, driven by Poindexter, exited the adjacent Southwestern bus terminal and struck him.  The decedent suffered a fractured hip and other related injuries from the accident.  The decedent died of unrelated causes before filing an action at law for his injuries.  His personal representative, Moses, filed a motion for judgment against the defendants for those injuries pursuant to Code § 8.01-25.

At trial, the videotaped deposition of the decedent was introduced to describe the accident, in which he stated: "I had been over to the Union Bank and I was crossing the street, and the bus pulls out of the garage and hits me."  The decedent knew that there was no crosswalk at the point where he crossed, but he attempted to cross because "[e]verybody else crosses there."  On direct examination, the decedent explained the precautions he took in crossing the street:

Q.   And did you look both ways before you crossed?

A.   Yes, sir.  I looked both ways, yes, sir.

Q.   And was there any traffic coming?

A.   No, sir, wasn't a thing coming.

The decedent testified on cross-examination that the accident occurred when he was preparing to step up onto the curb adjacent to the bus station:

Q.   So you had completely crossed Campbell Avenue?

    A.   Just about, yeah.

    Q.   And you were stepping up on the sidewalk?

    A.   Yes, ma'am.

    Q.   On the same side where the bus terminal is?

    A.   Yeah.

         .  .  .  .

    Q.   And you were in the process of stepping up on the
         curb?

    A.   Yeah.

    Q.   When what happened?

    A.   That's when the bus pulls out and hits me.

         .  .  .  .

    Q.   Were you almost at the curb, or were you stepping
         up onto the curb?

    A.   I think I stepped up on it.  I can't swear to it.
         I was getting ready to.

When the decedent was asked to explain why he did not see

the bus approaching as he crossed the street, he testified in

the following colloquy:

    Q.   All right.  Can you explain to us how it was that
         you didn't see the bus in order to get out of the
         way?

    A.   I didn't see the bus get out of the way?  The bus
         hadn't pulled out until I started to cross the
         road . . .

    Q.   All right.

    A.   The bus was sitting over there.

    Q.   Did you try to avoid the bus?

3

A. I didn't know the bus was going to pull out until after it hit me. . . . <u>The bus wasn't moving when I crossed the road</u>. (emphasis added).

An eyewitness to the accident explained that Poindexter was looking to her right in the direction of oncoming traffic on the one-way street, while simultaneously closing the doors to the bus and attempting to make a left turn onto Campbell Avenue, when the bus she was driving struck the decedent, who was positioned to her left:

Q. The driver of the bus. When the impact occurred –

A. Yeah, she was looking to her right –

Q. – she was looking to her right.

A. She was looking to her right for traffic. I do remember that, yes.

Q. Okay. The elderly man that was involved in the accident, was he right there to her right?

A. No.

Q. So when the impact occurred she wasn't looking in his direction?

A. No.

The defendants presented conflicting eyewitness testimony as to the cause of the accident, including one witness who testified that the decedent "didn't react at all until the bus hit him. He just kept walking straight across the street." Testimony was also presented that the impact occurred out in

4

Campbell Avenue and farther from the curb than the decedent described.

Following a two-day trial, the jury returned a verdict for Moses and awarded damages of $50,000. When the court polled the jury, there was confusion on the part of some jurors as to the verdict. The court then gave the jury additional instruction and sent the jury to deliberate further. After the jury again expressed confusion, the court provided additional instructions, and the jury again deliberated. When the jury returned, it delivered a unanimous verdict for Moses in the amount of $50,000, as it did originally. Moses then moved for entry of judgment on the verdict, but the court denied "the motion for entry of judgment today." The defendants moved to set aside the jury verdict. In its final order dated January 25, 2006, the circuit court granted the defendants' motion, set the jury verdict aside "on the ground that the plaintiff's decedent was guilty of contributory negligence as a matter of law," and entered judgment in favor of the defendants. We granted Moses this appeal.

## II. ANALYSIS

The circuit court's authority to set aside a jury verdict is limited and should be exercised "only if a jury verdict is plainly wrong or without credible evidence to support it." McGuire v. Hodges, 273 Va. 199, 205, 639 S.E.2d 284, 287 (2007)

5

(quoting Jenkins v. Pyles, 269 Va. 383, 388, 611 S.E.2d 404, 407 (2005)); see also Cohn v. Knowledge Connections, Inc., 266 Va. 362, 366, 585 S.E.2d 578, 581 (2003); Shalimar Dev., Inc. v. FDIC, 257 Va. 565, 569-70, 515 S.E.2d 120, 123 (1999); Code § 8.01-430. If the evidence adduced at trial is conflicting on a material point, or if reasonable persons may draw different conclusions from the evidence, or if a conclusion is dependent on the weight the fact finder gives to the evidence, a judge may not substitute his or her conclusion for that of the jury merely because he or she would have reached a different result. McGuire, 273 Va. at 205, 639 S.E.2d at 287; see also Jenkins, 269 Va. at 388, 611 S.E.2d at 407; Cohn, 266 Va. at 366, 585 S.E.2d at 581; Shalimar Dev., 257 Va. at 570, 515 S.E.2d at 123.

For purposes of this appeal, the defendants' primary negligence in the accident is not at issue. Rather, what is in controversy is whether there was sufficient evidence upon which the jury should resolve the issue of contributory negligence or whether, as a matter of law, the decedent was guilty of contributory negligence. See e.g., Jenkins, 269 Va. at 389, 611 S.E.2d at 407.

We have stated the principles of law that define contributory negligence and its determination on many occasions. "Contributory negligence is an affirmative defense that must be proved according to an objective standard whether the plaintiff

6

failed to act as a reasonable person would have acted for his own safety under the circumstances." Jenkins, 269 Va. at 388, 611 S.E.2d at 407; see also Sawyer v. Comerci, 264 Va. 68, 74, 563 S.E.2d 748, 752 (2002); Ponirakis v. Choi, 262 Va. 119, 124, 546 S.E.2d 707, 710 (2001); Artrip v. E.E. Berry Equip. Co., 240 Va. 354, 358, 397 S.E.2d 821, 823-24 (1990). "The essential concept of contributory negligence is carelessness." Jenkins, 269 Va. at 388, 611 S.E.2d at 407; Sawyer, 264 Va. at 74, 563 S.E.2d at 752; Ponirakis, 262 Va. at 124, 546 S.E.2d at 711; Artrip, 240 Va. at 358, 397 S.E.2d at 823-24.

"The issue whether a plaintiff is guilty of contributory negligence is ordinarily a question of fact to be decided by the fact finder." Jenkins, 269 Va. at 389, 611 S.E.2d at 407; see also Sawyer, 264 Va. at 74, 563 S.E.2d at 752; Hot Shot Express, Inc. v. Brooks, 264 Va. 126, 135, 563 S.E.2d 764, 769 (2002); Ponirakis, 262 Va. at 125, 546 S.E.2d at 711. "The issue becomes one of law for the circuit court to decide only when reasonable minds could not differ about what conclusion could be drawn from the evidence." Jenkins, 269 Va. at 389, 611 S.E.2d at 407; see also Hot Shot Express, 264 Va. at 135, 563 S.E.2d at 769; Love v. Schmidt, 239 Va. 357, 360, 389 S.E.2d 707, 709 (1990).

Contributory negligence consists of the independent elements of negligence and proximate causation. See Karim v.

<u>Grover</u>, 235 Va. 550, 552, 369 S.E.2d 185, 186 (1988). Proof of a plaintiff's negligence alone is insufficient to establish contributory negligence, even if the plaintiff is negligent per se, as we explained in <u>Karim</u>:

> When a defendant relies upon contributory negligence as a defense, he has the burden of proving by the greater weight of the evidence not only that the plaintiff was negligent, <u>Burks v. Webb, Administratrix</u>, 199 Va. 296, 307, 99 S.E.2d 629, 638 (1957), but also "that his negligence was a proximate cause, a direct, efficient contributing cause of the accident," <u>Whitfield v. Dunn</u>, 202 Va. 472, 477, 117 S.E.2d 710, 714 (1961); <u>accord</u> <u>Powell v. Virginian Railway Co.</u>, 187 Va. 384, 390-91, 46 S.E.2d 429, 432 (1948). Thus, while the violation of a statute regulating traffic constitutes negligence,
>
>> it does not necessarily follow that such negligence will as a matter of law prevent a recovery by the plaintiff. There must be a causal connection between the violation of the statute and the injury, otherwise the violation is immaterial; and unless it is shown that the plaintiff's violation was a proximate or concurring cause which contributed directly to his injury, he is not thereby barred from a recovery.
>
> <u>Powell</u>, 187 Va. at 390, 46 S.E.2d at 432; <u>accord</u> <u>Bray v. Boston, etc., Corp.</u>, 161 Va. 686, 692, 172 S.E. 296, 298 (1934); <u>Lavenstein v. Maile</u>, 146 Va. 789, 801, 132 S.E. 844, 848 (1926).
>
> Ordinarily, the issue of proximate cause is a question of fact for resolution by a jury. It becomes a question of law for decision by a court only when reasonable minds cannot differ about the result. <u>Litchford v. Hancock</u>, 232 Va. 496, 499, 352 S.E.2d 335, 337 (1987).

235 Va. at 552-53, 369 S.E.2d at 186.

8

Citing our decision in Thomas v. Settle, 247 Va. 15, 439 S.E.2d 360 (1994), Moses contends on appeal that the decedent was not negligent and alternatively, even if he was negligent in crossing the street outside the crosswalk, his negligence was not a proximate cause of the accident.  In either circumstance, Moses asserts that the issue of whether the decedent was contributorily negligent was properly left to the jury, and the circuit court thus erred when it set aside the jury's verdict.

The defendants respond that the circuit court correctly set aside the jury verdict because the decedent was contributorily negligent as a matter of law.  The defendants contend that by crossing in the middle of the street and not at a crosswalk – in violation of Code § 46.2-923 – the decedent placed himself in obvious peril, barring him from recovery for his injuries.  Relying on Hooker v. Hancock, 188 Va. 345, 348, 49 S.E.2d 711, 712 (1948), the defendants argue that the decedent knowingly walked into the path of a moving vehicle, thereby establishing contributory negligence as a matter of law.

As the circuit court failed to articulate a basis for holding the decedent "was guilty of contributory negligence as a matter of law," we must examine the record to determine if the evidence on the elements of contributory negligence were sufficient for the jury to decide the issue or whether the circuit court correctly determined "reasonable minds could not

9

differ about what conclusion could be drawn from the evidence."
Jenkins, 269 Va. at 389, 611 S.E.2d at 407.  Upon that review,
we agree with Moses that the circuit court erred because the
issue of contributory negligence was proper for a decision by
the jury.

The case at bar is similar to Settle in which this Court
reversed the circuit court's judgment setting aside the jury
verdict.  247 Va. at 20, 24, 439 S.E.2d at 363, 365.  In Settle,
a sixteen-year old driver's car stalled after it ran out of gas,
and he was attempting to maneuver the car out of traffic when a
truck rear-ended the vehicle.  Id. at 17-18, 439 S.E.2d at 361-
62.  After the jury decided in favor of the plaintiff, the
circuit court sustained defendant's motion to set aside the
verdict and entered judgment for the defendant, concluding the
plaintiff had been contributorily negligent as a matter of law.
Id.  This Court, while assuming the possibility of plaintiff's
negligence, held "the trial court erred in concluding that the
decedent's negligence, if any, was a proximate cause of the
accident as a matter of law; that question presented a classic
jury issue under the facts of this case."  Id. at 20, 439 S.E.2d
at 363.

As in Settle, we hold that the circuit court erred in
determining contributory negligence as a matter of law because
the evidence "presented a classic jury issue under the facts of

this case." Id. Even if we assume, without deciding, that the decedent was negligent either by crossing the street outside a crosswalk or otherwise, the decedent's negligence alone does not establish contributory negligence. See Karim, 235 Va. at 552-53, 369 S.E.2d at 186. Just as in Settle, the additional element must be proven that the plaintiff's negligence "was a proximate or concurring cause that contributed directly to the accident." 247 Va. at 20, 439 S.E.2d at 363.

The evidence in the record was such that reasonable minds could differ about the conclusions to be drawn from that evidence. For example, if the jury believed the decedent's testimony that before crossing Campbell avenue he "looked both ways . . . wasn't a thing coming," that "[t]he bus wasn't moving when [he] crossed the road," and that he "was ready to get up on the curb" when the bus pulled out while Poindexter "wasn't looking in [decedent's] direction," then reasonable minds could differ on the conclusions to be drawn from that evidence. It would thus not be unreasonable, as a matter of law, for a jury to conclude, based on the foregoing, that the decedent's actions were not "a proximate cause, a direct, efficient contributing cause of the accident." Karim, 235 Va. at 552, 369 S.E.2d at 186 (quoting Whitfield, 202 Va. at 477, 117 S.E.2d at 714. Accordingly, the issue of the element of proximate cause for contributory negligence was properly submitted to the jury for

11

resolution.  Consequently, it was reversible error for the circuit court to set aside the jury verdict so determined and to fail to enter judgment for Moses.  See, e.g., Burroughs v. Keffer, 272 Va. 162, 169, 630 S.E.2d 297, 301 (2006); Jenkins, 269 Va. at 389-90, 611 S.E.2d at 408; Artrip v. E.E. Berry Equip.Co., 240 Va. 354, 358-59 397 S.E.2d 821, 823-24 (1990). The defendants' reliance upon our decision in Hooker v. Hancock is unavailing because the factual issues were markedly distinct in that case and not applicable to the case at bar.[*]

Given the conflicting evidence, the jury properly reviewed the credibility of the witnesses and weighed the evidence in reaching the verdict.  We must therefore reinstate the jury verdict because credible evidence supports it. See Loving v. Hayden, 245 Va. 441, 442, 429 S.E.2d 8, 9 (1993).

### III. CONCLUSION

For the foregoing reasons, we will therefore reverse the judgment of the circuit court, reinstate the jury's verdict, and enter final judgment for Moses.

Reversed and final judgment.

---

[*]In Hooker, the injured party, attempting to cross a two-way street on a dark night, ran "real fast" to avoid being hit by a car headed in one direction, and then dashed into the path of defendant's car, which was approaching from the other direction and had been visible for some distance because there was no visual obstruction at the time the injured party started across the busy thoroughfare.  188 Va. at 349-54, 49 S.E.2d at 713-15.

12