**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-2259**

DEUTSCHE BANK NATIONAL TRUST COMPANY, as trustee for First
Franklin Mortgage Loan Trust 2006-FF3,

                Plaintiff - Appellant,

      v.

INTERNAL REVENUE SERVICE,

                Defendant – Appellee,

      and

BABAK A. BATMANGHELIDJ; LEILY BATMANGHELIDJ; DANIEL BRIAN
COSTELLO, Trustee, C/O Lawrence E. Fischer, Esq.; EDWARD D
HUBACHER, Trustee, C/O Lawrence E. Fischer, Esq.; WATKINS
MOTOR LINES, INCORPORATED, C/O Douglas J. Glenn; KFH
INVESTMENTS, LLC, C/O Wayne F. Cyron; ALL PERSONS CLAIMING
AN OWNERSHIP INTEREST IN OR LIEN UPON THAT CERTAIN
PARCEL OF REAL PROPERTY LOCATED AT 9121 MILL POND
VALLEY DRIVE MCLEAN, VA 22102,

                Defendants.

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria. James C. Cacheris, Senior
District Judge. (1:07-cv-00683-JCC-JFA)

Argued: October 28, 2009          Decided: January 14, 2010

Before MICHAEL, Circuit Judge, HAMILTON, Senior Circuit Judge,
and Jane R. ROTH, Senior Circuit Judge of the United States
Court of Appeals for the Third Circuit, sitting by designation.

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** David H. Cox, JACKSON & CAMPBELL, PC, Washington, D.C., for Appellant.  Regina Sherry Moriarty, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:** Eileen M. O'Brien, JACKSON & CAMPBELL, PC, Washington, D.C., for Appellant.  John A. DiCicco, Acting Assistant Attorney General, Thomas J. Clark, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Dana J. Boente, Acting United States Attorney, Alexandria, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal concerns the Virginia doctrine of equitable subrogation. A somewhat obscure rule of equity, the doctrine ensures that a creditor obtains a first-priority lien on its debtor's property when it issues a loan based on a good faith belief that it will have such a lien. In this action NationPoint, a division of National City Bank of Indiana, made a loan to Babak Batmanghelidj based on such a good faith belief. Appellant Deutsche Bank National Trust Company (DB) later acquired this loan from NationPoint. When DB discovered that the Internal Revenue Service (IRS) possessed senior tax liens on Mr. Batmanghelidj's property, it brought this suit for equitable subrogation. The district court dismissed the suit, and DB now appeals. Because the IRS would be unfairly prejudiced by DB's subrogation, and because the doctrine cannot be applied when such prejudice would result, we affirm.

I.

DB alleges the following facts in its complaint. On November 8, 2005, NationPoint loaned Babak Batmanghelidj $990,000. On the same day, to provide security for the loan, Mr. Batmanghelidj's wife, Leily S. Batmanghelidj, transferred title, by warranty deed, to her property at 9121 Mill Pond Valley Drive in McLean, Virginia (the "Property") to herself and

Mr. Batmanghelidj as joint tenants with the right of survivorship. NationPoint's loan to Mr. Batmanghelidj was thereafter secured by a Deed of Trust on the Property. The Deed of Trust, also executed on November 8, 2005, was recorded on January 26, 2006.

In order to obtain first lien priority on the Property, NationPoint made payments out of the loan proceeds to satisfy the remaining balance (totaling $756,560.08) on three prior liens against the Property:

- A deed of trust originally in the amount of $600,000 granted by Mrs. Batmanghelidj and recorded on 11/25/98

- A deed of trust originally in the amount of $150,000 granted by Mr. and Mrs. Batmanghelidj and recorded on 1/31/05

- A deed of trust originally in the amount of $36,500 granted by Mrs. Batmanghelidj and recorded on 07/22/05

In addition, NationPoint paid $5,886.83 in state property taxes owed by Mr. Batmanghelidj and the $35,479 balance on an auto loan for which Mr. Batmanghelidj was liable. NationPoint disbursed the remaining $185,872.92 directly into Mr. Batmanghelidj's bank account. In connection with the November 8, 2005, loan transaction, Mr. Batmanghelidj executed an affidavit and Indemnification Agreement stating, in part, that there were no construction liens or state or federal tax liens

4

against the Property or the Property's owners that would remain unsatisfied after the payments.

In April 2006 NationPoint assigned the Batmanghelidj loan to First Franklin Financial Corporation, which, in turn, assigned the loan to DB in August 2006. After acquiring the loan, DB conducted a title search of the Property. That title search revealed that the representations in Mr. Batmanghelidj's affidavit and Indemnification Agreement were false and that two judgments and two IRS liens still encumbered the Property after the loan proceeds were disbursed. Apparently, Mr. Batmanghelidj had incurred more than $250,000 in federal income tax liability prior to November 8, 2005, and liens on the Property had attached at the instant title passed to him. Upon discovery of these liens, DB filed an action in Virginia state court, seeking a declaratory judgment that its lien on the Property had priority over the liens of the IRS and several others. The IRS removed the action to the U.S. District Court for the Eastern District of Virginia.

On September 17, 2007, the district court granted the IRS's motion under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings. The court held that the IRS's liens were senior to DB's lien because they attached first and that equitable subrogation did not apply. DB moved to amend its complaint, but the district court denied the motion with respect

5

to the IRS on the ground that amendment would be futile. DB now appeals the district court's determination that equitable subrogation does not apply.

## II.

We review de novo the district court's decision to grant judgment on the pleadings in favor of the IRS. Korotynska v. Metropolitan Life Ins. Co., 474 F.3d 101, 104 (4th Cir. 2006). A Federal Rule of Civil Procedure Rule 12(c) motion for judgment on the pleadings is decided under the same standard as a motion to dismiss under Rule 12(b)(6). Independence News, Inc. v. City of Charlotte, 568 F.3d 148, 154 (4th Cir. 2009). "On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face." Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009).

"Subrogation is the substitution of another person in the place of the creditor to whose rights he succeeds in relation to the debt." Fed. Land Bank of Baltimore v. Joynes, 18 S.E.2d 917, 920 (Va. 1942). When a "lender of money lent it with the intention and understanding that he be substituted to the position of the creditor," a court will treat the lender as if he had been assigned the loan provided "there are no intervening equities to be prejudiced." Id. Equitable

6

subrogation is "purely equitable in its nature, dependent upon the facts and circumstances of each particular case." Id. "[O]rdinary negligence of the subrogee does not bar the application of subrogation where an examination of the facts . . . shows that the equities strongly favor the subrogee." Centreville Car Care, Inc. v. N. Am. Mortgage Co., 559 S.E.2d 870, 872 (Va. 2002) (internal quotation marks omitted).

Following these principles and assuming as true the facts alleged in DB's complaint, we conclude that while DB's predecessor had the "intention and understanding that [it would] be substituted to the position of the [first priority lien holder]," equitable subrogation is nevertheless improper because there are intervening equities that would be prejudiced. Indeed, with regard to NationPoint's intention and understanding, we think it likely that NationPoint would not have extended a loan to Mr. Batmanghelidj unless it believed it would receive a first priority lien. Moreover, in some circumstances, lenders like NationPoint may be entitled to rely on representations like those made by Mr. Batmanghelidj that no other liens exist. But while the equities favor DB to some extent, we think the balance tips in favor of the IRS due to the prejudice it would suffer.

Junior lien holders have a right to expect that the liens senior to theirs will eventually be paid, whether that

7

payment flows from the debtor or from a liquidation of the property. <u>Centreville Car Care, Inc.</u>, 559 S.E.2d at 873. Absent an agreement to the contrary, however, they do not have the right to expect that senior liens will not change hands. When the transaction merely substitutes one senior lien holder for another without increasing the amount of senior debt, the junior lien holder cannot complain. <u>See</u> <u>Fed. Land Bank of Baltimore</u>, 18 S.E.2d at 920. Of course, when the transaction shrinks the senior debt, junior lien holders are not prejudiced because they are better off than they would have been absent the transaction. <u>Id.</u> at 922.

Junior lien holders are prejudiced, however, when the senior debt increases. Prior to November 8, 2005, there were liens totaling $756,560.08 senior to those held by the IRS. The proceeds from the NationPoint loan did not simply satisfy this debt. A substantial amount of loan proceeds — $227,238.75 — went either directly into Mr. Batmanghelidj's bank account or to pay unsecured debts rather than towards paying the IRS's judgment liens. If this court subrogated NationPoint's loan, the liens senior to those held by the IRS would grow by $227,238.75. This result would clearly prejudice the IRS.

DB responds by arguing that it is requesting only that $756,560.08 worth of its $990,000 lien be subrogated. In this way, the lien amount senior to the IRS liens will not increase

and therefore no prejudice will result. This argument, however, was implicitly rejected by the Supreme Court of Virginia in Centreville Car Care, Inc. v. N. Am. Mortgage Co. In that case a couple bought a home for $210,000 believing that the only lien on the property was the mortgage associated with the seller's original purchase. Of the $208,250 in loan proceeds the buyers obtained to purchase the home, only $198,928.07 went to satisfy the prior lien on the property. The remainder of the proceeds went to the sellers. In fact, there was a second lien on the property held by Centreville Car Care that was promoted to first lien when the prior mortgage was paid. Hence, the lien that North American Mortgage had on the home was not, as it had thought, first priority. The Virginia Supreme Court held that "Centreville was entitled to receive the balance of funds from North American Mortgage's loan to the [buyers] that was paid to [the sellers] after the promissory note held by [prior lien holder] was satisfied from those funds. To this extent, Centreville was prejudiced." Centreville Car Care, Inc., 559 S.E.2d at 873. For this reason, among others, the court did not grant partial or any other type of subrogation to North American Mortgage.

Again, subrogation is a matter of equity, "dependent upon the facts and circumstances of each particular case." Federal Land Bank of Baltimore, 18 S.E.2d at 920. Here, the

9

equities possibly favor the IRS even more definitively than Centreville Car Care. Not only did Mr. Batmanghelidj receive additional funds from NationPoint's loan above the value of the liens, two creditors — the state government and the auto loan holder — were essentially allowed to cut the line, receiving payment before more senior, secured lenders like the IRS. Moreover, the fault here may lie, as it did in Centreville Car Care, Inc., with the title examiner employed by the original lender. DB potentially has recourse against Mr. Batmanghelidj for his false representations, NationPoint's title examiner for its failure to find the IRS liens, and NationPoint for breach of its assignment agreement. Under these circumstances, we conclude that the equities do not favor DB, and we therefore decline to apply the doctrine of equitable subrogation.[*]

The district court's order granting the IRS's motion for judgment on the pleadings is therefore

AFFIRMED.

---

[*] We note that the district court concluded that NationPoint was negligent for not finding the IRS liens. Ordinarily, negligence is a question for a jury rather than a court that has before it nothing more than allegations in a complaint. See Estate of Moses v. Sw. Va. Transit Mgmt. Co., 643 S.E.2d 156, 160-61 (Va. 2007). Because we conclude that equitable subrogation is inappropriate here regardless of whether NationPoint was negligent, we do not reach that issue.

10